PAGE WOVEN WIRE FENCE COMPANY, Respondent, vs. STAUDENMAYER and 'another, Appellants.

*April 5—May 3, 1921.*

*Sales: Measure of damages upon default of seller: Special damages: Contract of sale: Parties: Contradiction by parol evidence: Amendment of answer.*

1. In the absence of a showing of special damages, the measure of damages for a seller's failure to deliver goods at the time specified in the contract of sale is the difference between the contract price and the market price at the time and place when and where the contract was breached.

2. In an action against E. S. and G. S. for the purchase price of fencing where the answer of G. S. adopted the theory that E. S. acted merely as his agent in buying the fencing, in which event E. S. suffered no damage from delay in delivery, and G. S. did not and could not, on adopting the agency theory, claim damages from E. S., the court properly refused to allow an amendment to the answer of E. S. in order to assert a counterclaim for the delay.

3. An order for fencing to be shipped to G. S. and charged to E. S., by whom the order was signed, was when accepted a

Page Woven Wire F. Co. v. Staudenmayer, 174 Wis. 154.

contract between the seller and E. S., whether or not there was also a contract between the seller and G. S., and could not be contradicted by showing the prior course of dealing between the parties and that as a matter of fact the seller knew and understood that the order was made by G. S. through E. S.

4. If defendants desired to defend on the ground that the contract was in fact with G. S., they should have interposed an equitable counterclaim for reformation on the ground of mutual mistake.

5. The increased cost of labor due to delay in delivery of fencing, and the loss due to the inability to use the pasture which the buyer intended to inclose, were not recoverable from the seller in the absence of evidence showing that when the contract was made both parties had knowledge of the circumstances and conditions by reason of which it was in the contemplation of the parties that a breach of the contract would result in special damages.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Contract. The defendant *E. R. Staudenmayer,* a farmer living in Caledonia, prior to April, 1915, had been the agent of and had had considerable dealings with the plaintiff, covering a period altogether of ten or twelve years. On April 8th he sent the plaintiff the following order:

"*Page Woven Wire Fence Company,* Adrian, Michigan: "Ship to *Mr. George Staudenmayer,* 4/9/15, R. R. Station: Portage. County: Columbia, State of Wisconsin. Via C., M. & St. P. When: At once. Fence terms and discounts: Net sixty days. 360 rods woven wire field fence, X 1155—32 Lion, .5909 per rod. Charge to *E. R. Staudenmayer,* Portage, Columbia county, Wisconsin. April 8, 1915."

Accompanying this order was a letter addressed to the company and signed by *E. R. Staudenmayer,* as follows:

"Sirs: Inclosed find order for Lion fencing which I consider a very nice order. Now the situation is such that there is nothing in the order for me unless I get it through

you, and I think I should rightly expect a commission on an order of that size. See what you can do for me."

The plaintiff acknowledged the receipt of the order by letter as follows:

"*Mr. E. R. Staudenmayer,*                    April 12, 1915.
          "Portage, Wisconsin.

"Dear Sir: We have yours of the 8th inst. inclosing an order for 360 rods of X 1155—32 Lion fencing. We are entering this order for immediate shipment.

"We note what you say with reference to selling this order so there was no money in it for you and that you ought to have a commission. We cannot understand it that way. When we make you an offer which is our lowest wholesale price, you cannot expect a commission off of that. The price we are making is .5909 a rod. That is the very least that we can afford to manufacture this fence for. If you wish a profit, you should sell for something above the lowest wholesale price. We cannot afford to cut it."

It appears that upon the receipt of the order by the officers of the company it was entered for shipment and directions sent by the plaintiff to Monessen to have shipment made. It appears without dispute that the goods were charged upon the books of the company to *George Staudenmayer* and that an invoice of the goods was sent to *George Staudenmayer*. The principal office of the company was located at Adrian, Michigan, and its mills at Monessen, Pennsylvania. The goods were delivered by the plaintiff to the railroad company May 8, 1915. It appears that on May 10th the defendant *George Staudenmayer* wrote the plaintiff canceling the order, and on May 12th the plaintiff wrote *George Staudenmayer* as follows:

"No instructions were received from you to cancel, hence without such notification shipment was made by us in good faith. In view of this, you can readily see that the responsibility rests on you and we must therefore expect that on receipt of the goods at destination they will be taken care of by you and paid for in accordance with the terms of sale."

It further appears that it was the intention of *George Staudenmayer* to use the fence, when received, to inclose 100 acres of pasture land. The damage claimed was $25 by reason of increased cost of labor due to delay, and the sum of $200 due to the inability to use the pasture which the fence was designed to inclose. Payment having been refused, this action was originally brought against *E. R. Staudenmayer* to recover the purchase price of the 360 rods of fencing. *George Staudenmayer* was subsequently made a party. On the part of the defendants it was claimed that the contract was made with *George Staudenmayer,* and the defendant *George Staudenmayer* counterclaimed for damages.

The case was submitted to the jury on a special verdict. The jury disagreed and was discharged. The plaintiff then moved for judgment upon the pleadings and undisputed evidence. The motion was granted and judgment was entered against *E. R. Staudenmayer* in the sum of $378.11, from which judgment the defendants appeal.

*Frank R. Bentley* of Baraboo, for the appellants.

For the respondent there was a brief by *E. S. Baker,* attorney, and *H. E. Andrews,* of counsel, both of Portage; and the cause was argued orally by *Mr. Andrews.*

ROSENBERRY, J. Ten assignments of error are made in relation to the admission and rejection of testimony for or against the plaintiff. Most of these objections become immaterial and are disposed of by the disposition of the major questions raised upon the record. At the close of the testimony *E. R. Staudenmayer* asked leave to amend his answer, setting up a counterclaim for damages for delay in shipment of the goods and for breach of contract on the part of the plaintiff for failure to ship in accordance with the terms of the contract. This is assigned as error. It was not shown that *E. R. Staudenmayer* suffered any damages by reason

of the delay in shipment. The measure of damages in a case
of the failure of the seller to deliver the goods at the time
specified in the contract is the difference between the contract
price and the market price of the goods at the time and place
when and where the contract is breached. *Cockburn v.
Ashland L. Co.* 54 Wis. 619, 12 N. W. 49; *Foss v. Heine-
man,* 144 Wis. 146, 128 N. W. 881; *Guetzkow Bros. Co. v.
A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119. There
was no evidence in the case showing that in this respect
*E. R. Staudenmayer* had suffered any damages whatsoever.
*George Staudenmayer* made no claim against *E. R. Stauden-
mayer* for special damages growing out of their relationship.
The allegations made in the answer of *George Staudenmayer*
did not permit of such a claim on his part against *E. R.
Staudenmayer,* who, according to the theory adopted in the
answer, merely acted as the agent of *George Staudenmayer.*
Therefore the trial court was right in refusing to permit
the amendment to the answer of the defendant *E. R.
Staudenmayer.*

It appears from the pleadings that the defendants rested
their case upon the allegation that the contract for the sale
and delivery of the goods was a contract between *George
Staudenmayer* and the plaintiff, and chose to stand or fall
by that allegation. The undisputed facts show, as stated,
that the order for the goods was made and signed by *E. R.
Staudenmayer* and that by the terms of the order the goods
were to be charged to *E. R. Staudenmayer.* The acceptance
of this order by the plaintiff made a contract between *E. R.
Staudenmayer* and the plaintiff and not between the plaintiff
and *George Staudenmayer.* Most of the assignments of
error as to the admission or rejection of testimony relate
to evidence which was offered to show that prior to this time
there had been an established course of dealing between the
parties and that, as a matter of fact, the plaintiff knew and
understood that the order was made by *George Stauden-
mayer* through *E. R. Staudenmayer.* An allegation of that

kind involved a contradiction of the written order, and no principle of law is more elementary or better established than that a written contract may not be contradicted by oral evidence in the absence of an allegation of mistake or fraud. The defendant *E. R. Staudenmayer* sought no reformation of the contract, made no allegation of mistake upon his part, and there is no evidence in the record which would support a finding of mutual mistake. Whether or not there was a contract between *George Staudenmayer* and the plaintiff, it is too plain to require argument that the writings upon their face made a contract between the plaintiff and *E. R. Staudenmayer*, and the trial court correctly so held.

If the defendants desire to defend upon the ground that the contract was in fact made with *George Staudenmayer*, they should have interposed an equitable counterclaim and asked that the contract be reformed on the ground of mutual mistake. That would have presented an equitable issue triable by the court. Instead the defendants chose to proceed to trial before a jury upon a contested question of fact, and the undisputed written evidence shows that the contract as made was a contract between the plaintiff and *E. R. Staudenmayer* and not a contract between plaintiff and *George Staudenmayer*.

In order to sustain the claim of the defendants that they were entitled to recover special damages, evidence should have been offered showing that at the time of the inception of the contract both the plaintiff and defendants had knowledge of the circumstances and conditions by reason of which it would be in contemplation of both parties that a breach of the contract by the plaintiff would result in special damages. Evidence of that sort was not forthcoming. Upon the pleadings and the undisputed evidence the trial court correctly held that the defendant *E. R. Staudenmayer* was liable to the plaintiff for the value of the goods delivered.

*By the Court.*—Judgment affirmed.